UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                                              CASE NO. 6:10-cr-00009-22-DAB

MATTHEW S. STEARMAN

_____

### SENTENCING MEMORANDUM

This memorandum articulates the Court's rationale for arriving at the sentence it imposed on December 20, 2010.

By way of background, Stearman's base offense level was 22 for violating 18 U.S.C. § 2252A(a)(2)(B). USSG § 2G2.2(a)(2). The Court added several enhancements to that level. Because the material involved a prepubescent minor or minor under age 12, the Court added two levels. USSG § 2G2.2(b)(2). Five levels were added because the offense involved the distribution for the receipt of a thing of value, but not for pecuniary gain. USSG § 2G2.2(b)(3)(B). The offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence; thus, the Court added four levels. USSG § 2G2.2(b)(4). The Court added two more levels because the offense involved the use of a computer for possession, transmission, receipt, or distribution of the material. USSG § 2G2.2(b)(6). Finally, five levels were added because the offense involved 600 or more images. USSG § 2G2.2(b)(7)(D). This totaled 40. Then, the Court subtracted three levels: two for acceptance of responsibility and one for assisting authorities in the investigation of the offense by providing timely notification of intent to plead guilty. Thus, Stearman's total offense level was 37 and he had a criminal history

category of I.  The guideline imprisonment range was 210-262 months.  The Court sentenced Stearman to 210 months imprisonment with a life term of supervised release.

The Court read and considered all of the cases Stearman presented to support his argument that a departure from the guidelines range is appropriate in child pornography cases such as this, but the Court sentenced Stearman within the advisory Guidelines range, agreeing with the Government that such a sentence in this case "will achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) because it will reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect children from further crimes of the defendant."  (Doc. No. 41 p. 1.)  Nothing suggested to the Court that it should grant a variance or that the enhancements should not apply.

## I. NO VARIANCE IS WARRANTED

The Court declined to impose a variant sentence.  Stearman's requested five-year sentence would not reflect the severity of his crime or accomplish the goals of deterrence and protection of society.  Neither Stearman's physical characteristics nor his mental abilities struck the court as making him extremely vulnerable to assault in prison.  *See United States v. Graham*, 83 F.3d 1466, 1481 (D.C. Cir. 1996) (holding that extreme vulnerability to assault in prison may be a ground for departure, but the vulnerability "must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse").  Polygraphic evidence that Stearman did not ever have physical contract with children under the age of 18 was also not reason for a variance.  Stearman was sentenced for viewing and distributing child pornography via a computer; he will not receive a shorter sentence simply because a polygraph test demonstrated that he did not commit additional crimes.  Further, imposing a sentence of just five years because that will be long enough for Stearman to

accomplish "any treatment the prison has to offer" ignores the sentencing goals mentioned above. (*See* Doc. No 40 p. 7.)  Finally, the Court declined to apply such a variance on the grounds that Stearman was "only" a viewer and not a "doer." (*See id.*)  Stearman's guidelines sentence already provided for such distinctions.  Moreover, the Court articulated that even though no evidence demonstrated that Stearman produced pornography, he nevertheless was a "doer" in the sense that he traded child pornography.

In imposing Stearman's sentence, the Court considered the section 3553(a) factors, including the nature and seriousness of his offense.  Stearman viewed and distributed images of young and very young children who were being sexually abused and/or tortured.  These children were not abstractions or objects; they were real people who experienced untold horror in order for these pictures and videos to be produced.  They are undoubtedly still suffering and will continue to suffer the effects of such abuse.

Nothing in Stearman's history or characteristics suggested a reason to impose a lesser sentence.  He did not suffer a history of abuse and appears to come from a supportive family.

The sentence reflected just punishment and adequate deterrence.  Many sexual offenders like Stearman rationalize that they are doing no wrong or harm by simply viewing and trading such images and videos on the computer.  As Stearman testified, when viewing the images, he was not conscious of the fact that the images were pictures of real people being victimized.  Stearman also demonstrated a tendency to "slip" into deeper levels of egregiousness; as he testified at the sentencing hearing, he progressed in his desires for images of children younger and younger.  An adequate sentence sends the message to Stearman and others that their behavior is not innocent or harmless.  Stearman's sentence thus comports with the goal to impress upon offenders the serious nature of this crime and to deter future behavior.  In addition,

though Dr. Shaw testified that Stearman has a low risk of re-offending, the Court believes the contrary. Stearman appears to have a high risk based on the ease with which he progressed into viewing images of younger children being abused and tortured without awareness that he was actually contributing to their harm. The Court also finds an indication of this based on the suggestion he admitted making to the agent during a chat conversation that if the agent could not find new pictures, an alternative would be to go into producing child pornography.

## II. GUIDELINES OBJECTIONS

A.     **The Court Applied USSG §§ 2G2.2(b)(2) and 2G2.2(b)(6)**

Stearman pleaded guilty to 18 U.S.C. § 2252A(a)(2)(B), which criminalizes any person who knowingly reproduces any material that contains child pornography that has been mailed or has used any means or facility of interstate or foreign commerce, including by computer. Child pornography is defined in 18 U.S.C. § 2256 as visual depictions of a person under the age of 18 years old engaging in sexually explicit conduct. The Court added two levels to Stearman's base offense level because the sexually explicit images involved children younger than 12 or who had not attained puberty. *See* USSG §§ 2G2.2(b)(2). It added two more because the "offense involved the use of a computer . . . for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material." *See* USSG §§ 2G2.2(b)(6). This does not constitute double counting because these are aggravating factors, not elements of the offense. *See United States v. Tenuto*, 593 F.3d 695, 696 (7th Cir. 2010). Double counting occurs when the underlying offense necessarily addresses the same conduct as the enhancements. *Id.* These enhancements address conduct beyond that needed to satisfy this statute because sexually explicit images of 13-17 year-olds also constitute child pornography, as would distributing the images via printed materials, video tapes, cell phones, DVDs, or CDs. Therefore, adding these

enhancements was not double counting. Their purpose was to reflect the enhanced seriousness of Stearman's crime – that he distributed sexually explicit and violent images via the computer that contained depictions of children under age 12, and sometimes even infants. Stearman's assertion that he would have no way of knowing if some of the files he downloaded contained images of children under 12 is belied by the evidence that he actively sought images of young girls.

### B. The Court Applied USSG § 2G2.2(b)(3)(B)

The Court added a five-level enhancement for distribution for the expectation of receipt of a thing of value. *See* USSG § 2G2.2(b)(3)(B). Stearman's chat conversations demonstrated that he sought out others with whom to share pornographic images and did trade such images. Stearman suggested that sharing files was not a "thing of value" because "files could not be obtained without sharing them so there really is no gain from peer to peer exchanges." (Doc. No. 40 p. 9.) His argument is contradicted by the commentary to USSG § 2G2.2(b)(3)(B), which explains: "[I]n a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other pornographic material bartered in consideration for the material received." Stearman cited *United States v. Griffin*, 482 F.3d 1008 (8th Cir. 2007), to support his argument that exchanging images does not make them things of value. However, the court in *Griffin* held that, in addition to trading or bartering for child pornography, the five-level distribution enhancement applied to a defendant who used "a file-sharing network to obtain child pornography from other network users, while allowing the child pornography files in his shared folder to be accessed and downloaded by others, [which] constituted 'distribution for the receipt, or expectation of receipt, of a thing of value, but not for

5

pecuniary gain' under § 2G2.2(b)(2)(B)." *Id.* at 1012. Stearman engaged in the same behavior described in the statute and the caselaw; thus, the Court applied this enhancement.

C.     **The Court Applied USSG § 2G2.2(b)(7)(D)**

The Court added a five-level enhancement because the offense involved 600 or more images. *See* USSG § 2G2.2(b)(7)(D). There were 244 picture files and 9 video files. Pursuant to USSG § 2G2.2, each video is considered to have 75 images. The total number of images was over 3,000.

### III. CONCLUSION

In light of its analysis of the factors as set forth above, the Court did not grant a variance but rather applied the enhancements, determining that a guidelines sentence was warranted. The Court agreed that there has been an increase in the lengths of guidelines sentences for crimes involving child pornography but disagreed with the reason for the change. The change has not been with the guidelines or incidental; the change, the Court determined, has been purposeful. It has occurred in order to reflect the ease with which perpetrators can now use the internet to view and distribute images of countless children being sexually abused and tortured. The sentences imposed also reflect an increased awareness of the victims and the continued impact of such torture and abuse on their daily lives. Finally, the increased sentence lengths reflect a consciousness that a significant period of imprisonment is necessary to protect children.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida, on December 20, 2010.

ANNE C. CONWAY
United States District Judge